HONORABLE BRIAN D. LYNCH

HEARING DATE: WEDNESDAY, APRIL 18, 2018
HEARING TIME: 10:00 A.M.
LOCATION: TACOMA, COURTROOM I
RESPONSE DATE: AT TIME OF HEARING

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>PUGLIA ENGINEERING, INC.,<br><br>                    Debtor. | Case No. 18-41324-BDL |

**THIS DECLARATION IS AMENDED ONLY AS TO REFLECT THE HEARING LOCATION.**

**AMENDED DECLARATION OF NEIL TURNEY IN SUPPORT OF EMERGENCY MOTIONS FOR ORDERS (1) (i) AUTHORIZING INTERIM USE OF CASH COLLATERAL, (ii) GRANTING INTERIM APPROVAL OF ADEQUATE PROTECTION, AND (iii) SETTING FINAL HEARING; (2) AUTHORIZING PAYMENT OF PRE- AND POST-PETITION WAGES; (3) REGARDING CONTINUED UTILITY SERVICE; AND (4) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEMS**

NEIL TURNEY declares as follows:

1. I am the founder, president and sole shareholder of Puglia Engineering, Inc., debtor in possession herein ("Puglia" or the "Debtor"). I have personal knowledge of the facts stated herein, and I am competent to testify to them.

AMENDED DECLARATION OF NEIL TURNEY – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6

Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 1 of 13

2. The Debtor filed its petition for relief under Chapter 11 on April 14, 2018 (the "Petition Date"). The Debtor has retained control over its assets and continues to operate its business pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. In 1991, I founded Puglia in Tacoma as a mobile ship-repair company, initially operating at 401 Alexander Avenue, Tacoma, on a Port of Tacoma property. Since 1996, Puglia has operated at 2216 East 11th Street, adjacent to Port of Tacoma operations. Puglia has served the needs of the maritime industry in Pierce County for almost thirty years. I remain Puglia's sole shareholder and president.

4. In 2002, Puglia opened a second location, known as the Fairhaven Shipyard, when we acquired the assets of Bellingham Bay Shipyards, LLC, from a bankruptcy trustee. The Fairhaven Shipyard includes two dry docks. Puglia provides a full array of services at the Fairhaven facility related to fabrication, mechanical, piping/boiler, electrical and painting/blasting. The Fairhaven Shipyard operates on property leased from the Port of Bellingham.

5. Puglia's operations tend to be seasonal. Operations usually ramp up in October and carry through the spring of the following year. At its seasonal peak, Puglia employs some 140 workers. During the months of July – September, operations and Puglia's workforce decline.

6. Prior to the Petition Date, Puglia entered into a number of financing transactions with Washington Federal ("WaFed") (collectively, the "Credit Facilities"), which may be summarized as follows:

- A commercial equipment loan (the "Dry Dock Loan") in the stated amount of $7,821,894.94, evidenced, in part, by that certain Equipment Finance Agreement dated as of March 2, 2015, by and between the Debtor and WaFed, for the finance of the *Faithful Servant* (the "Dry Dock") pursuant to, and more particularly described in, Equipment Schedule No. 1 dated as of

AMENDED DECLARATION OF NEIL TURNEY – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6

Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 2 of 13

March 2, 2015 (together with all schedules or addenda thereto, collectively, the "Dry Dock EFA"), and secured, in part, by the Dry Dock and all machinery and equipment affixed thereto, all insurance proceeds and payments arising therefrom, and all logs, manuals and records pertaining thereto (all as more fully described in the Dry Dock EFA, collectively, the "Dry Dock Collateral"), as more fully described in that certain (i) Preferred Mortgage of Vessel dated as of March 5, 2015, executed by the Debtor in favor of WaFed, and filed with the United States Coast Guard National Vessel Documentation Center on March 30, 2015, at 5:45 P.M. under Batch No. 26445800, Document I.D. No. 4 (the "Ship Mortgage"), and (ii) the Dry Dock EFA (collectively, the "Dry Dock EFA Documents");

- A commercial equipment loan (the "Equipment Loan") in the stated amount of $500,000.00, evidenced, in part, by that certain Equipment Finance Agreement dated as of December 28, 2016, by and between the Debtor and WaFed, for the finance of certain equipment more fully described in Equipment Schedule No. 2 thereto (the "Equipment Collateral") dated as of December 29, 2016 (together with all schedules or addenda thereto, collectively, the "Equipment EFA");

- A line of credit in the maximum principal amount of $2,000,000.00 (the "Line of Credit"), evidenced, in part, by that certain amended and restated Promissory Note dated as of July 7, 2017, executed by the Debtor in the stated principal amount of the Line of Credit (as modified, the "Note"), which Line of Credit is governed by that certain amended and restated Business Loan Agreement dated as of July 7, 2017 (the "Loan Agreement"), and secured by substantially all of the Debtor's assets, including, without limitation, all of the Debtor's inventory, chattel paper, accounts, equipment and general intangibles (collectively, the "Blanket Collateral"), pursuant to and as more fully described in that certain Commercial

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Security Agreement dated as of January 16, 2015 (the "Blanket Security Agreement") (collectively, the "LOC Documents"). The Blanket Collateral further secures all other Credit Accommodations pursuant to the cross-collateralization clause contained in the Blanket Security Agreement; and

The Dry Dock Collateral, Equipment Collateral and Blanket Collateral are hereinafter collectively referred to as the "Prepetition Collateral."

7. The aggregate amount owing under the Credit Facilities was approximately $9 million as of the Petition Date (collectively, the "Prepetition WaFed Debt"). I have personally guaranteed each of the WaFed Loans.

8. Puglia's value is in its ability to generate income from services to its customers, rather than in the value of its hard assets. An August 2017 appraisal by the James G. Murphy Company of Puglia's equipment assets in Tacoma and Bellingham (other than dry docks) yielded the following values:

| Location | Forced Liquidation Value | Orderly Liquidation Value | Fair Market Value |
|---|---|---|---|
| Tacoma, WA | $456,975.00 | $492,575.00 | $556,825.00 |
| Bellingham, WA | $1,617,675.00 | $1,860,325.00 | $2,264,750.00 |
| **Total:** | **$2,074,650.00** | **$2,352,900.00** | **$2,81,575.00** |

In August 2017, appraisals of the *Faithful Servant* and the AFDL dry docks by Southport Atlantic valued them at $3,000,000 and $275,000, respectively.

9. In mid-2015, we began discussions with Bay BAE Systems Ship Repair, Inc. ("BAE Parent") concerning a potential transaction relating to a shipyard facility in San Francisco. The shipyard (the "SF Facility") includes two dry docks. The City and County of San Francisco, operating

AMENDED DECLARATION OF NEIL TURNEY – Page 4

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

through its Port Commission (the "Port"), own the SF Facility. At the time, a wholly-owned subsidiary of BAE Parent, BAE Systems San Francisco Ship Repair, Inc. ("BAE-SF," and together with BAE Parent, "BAE"), operated the SF Facility pursuant to a lease with the Port (the "Facility Lease"). The Facility Lease obligated BAE-SF to maintain both dry docks in "good and working order, condition and repair," and made BAE-SF responsible for any dredging and dredging-related activities required in connection with SF Facility operations.

10. Puglia embarked on its due diligence efforts. Later, on December 1, 2016, we executed a conditional stock purchase agreement with BAE Parent (the "Purchase Agreement") to acquire the stock of BAE-SF. The Port later granted its consent to the transaction.

11. We took possession of the SF Facility in early January 2017. Our contention is that only then did we learn that the condition of the SF Facility – particularly the condition of the dry docks and dredging – was considerably worse than and inconsistent with information that BAE had provided in connection with our due diligence activities. BAE disputes these contentions, and alleges that Puglia knew that it was buying an asset, on an as-is, where-is basis, that was in need of significant investment, and that BAE refused to warrant the recertification of the dry docks.

12. We promptly notified the Port of these discoveries. The Port thereafter issued a notice of default to BAE and Puglia under the Facility Lease on various grounds.

13. On February 15, 2017, Puglia filed a lawsuit against BAE and the Port in San Francisco County Superior Court, *Puglia Engineering, Inc. v. BAE Systems Ship Repair, Inc., et al.*, Case No. CGC-17-557087 (the "California Lawsuit"), asserting various claims, including a claim for rescission of the Purchase Agreement and related agreements. The California Lawsuit was stayed by that court but remains pending. Puglia also notified BAE of its rescission of the Purchase Agreement.

AMENDED DECLARATION OF NEIL TURNEY – Page 5

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6

Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 5 of 13

14. At the Port's urging, the Port and Puglia entered into an agreement whereby Puglia would operate the SF Facility as an independent contractor for 90 days to keep the facility from closing. Puglia honored the agreement with Port, but was unable to operate the SF Facility as it had intended due to its condition. On or about May 28, 2017, Puglia ceased operations and vacated the facility.

15. Meanwhile, on February 21, 2017, BAE Parent commenced separate litigation in the district court for the Southern District of New York, *BAE Systems Ship Repair, Inc. v. Puglia Engineering, Inc.*, Case No. 1:17-cv-01287-RJS (the "New York Lawsuit"). That litigation remains pending.

16. We engaged in periodic discussions with BAE towards a consensual resolution during the latter part of 2017 and early 2018. On October 20, 2017, we met with BAE representatives in Seattle to discuss a specific settlement proposal. Soon thereafter, and at the request of the parties, the New York Lawsuit was stayed until February 1, 2018.

17. In mid-January 2018, we began discussing another structure with BAE by which settlement might be achieved. On January 29, we made a formal written proposal to BAE. After lengthy discussions and the exchange of numerous drafts of a term sheet and settlement positions, on March 27 the parties agreed to the terms of a settlement. On April 6, 2018, the parties executed a Settlement and Mutual Release Agreement (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as Exhibit A. The settlement anticipates the filing of this chapter 11 case, and Puglia will be filing a separate motion seeking court approval.

18. The Debtor requires the immediate use of cash proceeds from the collection of customer contracts and accounts receivable ("Cash Collateral") to minimize disruption to and avoid termination of its operations, and thereby avoid immediate and irreparable harm to its business

AMENDED DECLARATION OF NEIL TURNEY – Page 6

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6
Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 6 of 13

pending a final hearing pursuant to Bankruptcy Rules 4001(b)(2) ("Final Hearing"). The Debtor proposes to use Cash Collateral pursuant to the terms set forth herein and the budget attached as Exhibit B hereto (the "Interim Budget"). The Debtor would be in compliance with its obligations as to the Interim Budget so long as the actual expenditures paid with Cash Collateral do not exceed the corresponding expense line item set forth in the Interim Budget by more than ten percent (10%) for each line item for any given month, and the total amount of Cash Collateral used does not exceed the total amount set forth in the Interim Budget for all expenses by more than five percent (5%) for any given month, and both on a cumulative basis (the "Variances"). Variances may be increased by amounts necessary to fund Debtor's operations with WaFed's prior written consent and without further order of the Court. The Debtor would otherwise not use Cash Collateral for any purpose that is not authorized by the Bankruptcy Code, the Interim Budget, and this Order or subsequent order of the Court.

Pursuant to §§ 361, 362 and 363 of the Bankruptcy Code, WaFed has requested, and the Debtor has agreed to provide and hereby proposes, adequate protection of WaFed's interests in Cash Collateral by granting WaFed security interests and liens in the same priority as the Prepetition Liens in and to all personal property of the Debtor, whether now owned or hereafter acquired, wherever located, that is the same type of personal property as the Prepetition Collateral (the "Postpetition Collateral"), and all rents, profits and other proceeds of the Postpetition Collateral (collectively, the "Replacement Liens"). The Replacement Liens would be in addition to the Prepetition Liens, and would remain in full force and effect notwithstanding any subsequent conversion or dismissal of this case. The Replacement Liens would be senior in priority to any and all liens or security interests in the assets of the Debtor and its estate, whenever granted.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6
Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 7 of 13

The Replacement Liens would be valid, perfected and enforceable security interests and liens on the Postpetition Collateral of the Debtor without further filing or recording of any document or instrument or any other action, but only to the extent of Cash Collateral used during the term of this Interim Order and any diminution in value of the Prepetition Collateral, and only to the extent of the enforceability of WaFed's security interests in the Prepetition Collateral. Notwithstanding the foregoing, if WaFed desires, in its sole discretion, to take any action or record or file any instrument or document for the purpose of evidencing or perfecting the Replacement Liens, then (a) the Debtor will fully cooperate with WaFed in doing so, and (b) the automatic stay would be modified to permit WaFed to take such actions. In addition, if WaFed so elects, it may (but shall not be obligated to) file or record a certified copy of the order granting the Debtor interim authority to use Cash Collateral (the "Interim Order") in any filing or recording office of any county, state or other jurisdiction in which the Debtor owns property, and such filing or recording shall be accepted by such filing or recording office and shall constitute additional evidence of the perfection of WaFed's liens and security interests as granted hereunder.

As additional adequate protection, the Debtor proposes to make payments to WaFed in the amount of $65,000, commencing on or about May 10, 2018, continuing monthly thereafter (the "Adequate Protection Payments"). The Adequate Protection Payments shall have superpriority in accordance with the provisions of 11 U.S.C. § 364(c)(1) over any and all administrative expenses of any kind whatsoever including, without limitation, the kind specified in 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c) or 726.

The authority of the Debtor to use Cash Collateral would terminate automatically upon the earlier of (each, a "Change Event") (a) the Debtor's material breach of the Interim Order or the Interim Budget; (b) entry of an order that stays, reverses, vacates, or modifies the Interim Order in any

AMENDED DECLARATION OF NEIL TURNEY – Page 8

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6
Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 8 of 13

material respect without the prior written consent of WaFed, unless such order otherwise provides; (c) conversion of the Debtor's case to a case under chapter 7 of the Bankruptcy Code; or (d) the appointment of a trustee in this chapter 11 case. Upon the occurrence of a Change Event, WaFed would have the right, but not the obligation, to note a hearing before this Court seeking such relief as it may deem appropriate upon five business days' notice to (i) counsel for the Debtor; (ii) counsel for any statutory committee appointed herein or; if no such committee has been appointed, then to the twenty largest unsecured creditors; (iii) the Office of the U.S. Trustee; and (iv) all parties that have requested special notice herein.

Pursuant to §§ 361, 362 and 363 of the Bankruptcy Code, the Debtor believes that WaFed's interests shall be adequately protected by the granting of the Replacement Liens. WaFed would reserve the right to later assert that its interest in the Prepetition Collateral lacks adequate protection.

**Wages**

19. The Debtor currently employs 95 individuals. The Debtor's most recent payroll periods runs from April 14, 2018 through April 20, 2018 and is scheduled to be paid on April 20, 2018. In addition, certain payroll taxes associated with the prepetition portion of the payroll period have not yet been paid.

20. The Debtor estimate s that amounts owed on April 20, 2018 in connection with the payroll for the period ending April 20, 2018 and related taxes are approximately $92,845.88.

21. The Debtor maintains employer-sponsored medical, dental, vision, life, long-term disability, and short-term disability plans for its employees, with annual and monthly costs as indicated:

| **Type** | **Company** | **Monthly Cost** (Employer portion only) | **Annual Cost** (Employer portion only) |
|---|---|---|---|
| Health/Preventive/Vision/Life/ | Machinists H&W Trust | 70,283.62 | 843,403.44 |

AMENDED DECLARATION OF NEIL TURNEY – Page 9

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6

Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 9 of 13

| Type | Company | Monthly Cost (Employer portion only) | Annual Cost (Employer portion only) |
|---|---|---|---|
| ST Disability | Fund | | |
| Dental | Northwest I.A.M. Benefit Trust | 5,462.55 | 65,550.60 |
| Medical/Dental | Northwest Metal Crafts Trust Fund | 35,144.40 | 421,732.80 |
| ST Disability/ LT Disability/ Life/ADD | Standard Insurance Co. | 1,368.80 | 16,425.60 |
| | | | |
| **Totals:** | | **112,259.37** | **1,347,112.44** |

22. The Debtor's business operation also includes providing its employees other benefits such as 401k benefits, vacation pay and a reimbursement of business expenses including credit card charges for company-authorized expenses, holiday pay, and safety incentives.

23. The Debtor desires to continue to provide, in the exercise of its discretion and business judgment, employee benefits including the referenced insurance coverage and the payment of accrued and unpaid benefits on an uninterrupted basis.

24. A loss of the ability to pay its ordinary payroll and benefits would have an adverse effect on the Debtor's ability to maintain its ongoing operations and successfully maximize its assets for the benefit of creditors.

25. Allowing the Debtor to honor prepetition claims for wages and employee benefits, including honoring payroll, will assist the Debtor in maintaining normal day-to-day operations.

26. By preventing employees from suffering loss of income and benefits, employees are more likely to remain with the Debtor through its restructuring, to the benefit of the estate and its creditors. The Debtor believes no employee is owed in excess of $12,850 in prepetition earnings as allowed by 11 U.S.C. § 507(a)(4).

**Utilities**

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6

27. Prior to the Petition Date, the Utility Providers provided Utility Services to the Debtor. The services provided by the Utility Providers are crucial to the continued operations of the Debtor and the Debtor may suffer irreparable harm if the relief requested by this Motion is not granted by the Court. The Debtor fully intends to pay all postpetition obligations owed to the Utility Providers in a timely manner.

28. As adequate assurance of future payment pursuant to Bankruptcy Code § 366, the Debtor proposes to establish an account (the "Utility Account") in the amount of $20,282.31, which is equal to approximately two weeks of service from all of its Utility Providers as set forth on Exhibit A to the Emergency Motion for Order Approving Adequate Protection to Utilities (the "Proposed Adequate Assurance"). The Utility Account will serve as a cash security deposit to provide the Utility Providers adequate assurance of payment for Utility Services provided to the Debtor after the Petition Date.

29. To the extent the Debtor fails to timely pay a Utility Provider for postpetition services, the Utility Provider may submit a payment request to the Debtor, certifying that the Debtor failed to pay for postpetition services and that such amounts are still outstanding.

30. The Debtor shall pay the outstanding amount within seven business days following receipt of the payment request, subject to its right to contest the payment request in this Court or any other court with jurisdiction.

31. Payments from the Utility Account shall be made in the order that the Debtor receives requests and the Debtor shall ensure that the Utility Account is replenished such that it remains at $20,282.31, or such greater amount to which the Debtor may agree or the Court may require. Bankruptcy Code § 366(c)(1)(A) provides in relevant part that "the term 'assurance of payment' means . . . (i) a cash deposit."

AMENDED DECLARATION OF NEIL TURNEY – Page 11

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6
Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 11 of 13

**Cash Management**

32.   Prior to the commencement of this Chapter 11 case, the Debtor maintained bank accounts as follows:

| Bank | Account No. | Purpose of Account |
| --- | --- | --- |
| Washington Federal | 3557 | Checking Account |
| Washington Federal | 4233 | Checking Account |
| Umpqua Bank | 2548 | Checking Account |
| Umpqua Bank | 0116 | Checking Account |

33.   The Debtor's accounts (the "Cash Management System") are operated as follows: The Washington Federal 3557 Account is the only current and primary operating account to which all deposits are routed and from which bills and payroll are paid. The Washington Federal 4223 Account is the Debtor's cash account that is primarily operated for employee reimbursements and expenses. The original purpose of the Umpqua accounts are for the Debtor's operations in San Francisco, where there is no Washington Federal branch, but the Debtor does not currently use those accounts for any of its activities.

34.   The Debtor's Cash Management System is a vital part of its business operations. Requiring the Debtor to establish a new cash management system would cause delay and produce disruption, particularly when the Debtor is already subject to the usual operational adjustments attendant to a Chapter 11 filing.

35.   The Debtor also requests that it be authorized to use its prepetition accounts and prepetition checks and checking account without placing the label "debtor-in-possession" on each check. The parties with which the Debtor transacts business will be aware of its status as debtor-in-possession.

AMENDED DECLARATION OF NEIL TURNEY – Page 12

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6
Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 12 of 13

36. Use of existing accounts and checks will ensure that there is a smooth transition into Chapter 11 and minimal disruption of the Debtor's operations.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing information is true and correct.

DATED this 16th day of April, 2018, at Tacoma, Washington.

/s/ Neil Turney
Neil Turney

AMENDED DECLARATION OF NEIL TURNEY – Page 13

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1839 20111 cd165t13m6
Case 18-41324-BDL    Doc 15    Filed 04/16/18    Ent. 04/16/18 17:02:33    Pg. 13 of 13