The Honorable Brian D. Lynch
Hearing Date; May 17, 2018, 9:30 a.m.
Responses Due: May 10, 2018
(*extension granted by Debtor until May 14*)

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

------------------------------------------------ X

In re:

PUGLIA ENGINEERING INC.,

          Debtor.

------------------------------------------------ X

Case No. 18-41324-BDL

OFFICIAL CREDITORS COMMITTEE RESPONSE TO DEBTOR'S 9019 MOTION

## I.    INTRODUCTION & FACTUAL BACKGROUND

The Official Committee of Unsecured Creditors of the Puglia Engineering, Inc. bankruptcy estate ("Official Creditors Committee"), by and through its counsel, hereby files this Response to the Debtor's 9019 Motion, incorporating as if fully set forth herein the Motion to Continue, ECF No. 112. The Settlement should not be approved because Official Creditors Committee has preliminarily found a *prima facie* case of gross mismanagement by the officers currently controlling the Debtor's business operations.

Debtor's management took the prepetition action that gives rise to the factual dispute the 9019 Motion seeks to settle: negotiating, entering into and closing the complex BAE Purchase Agreement without legal representation. Realizing virtually immediately upon closing that the transaction rendered the Debtor insolvent, its management then opted to litigate themselves into an even deeper financial deficit by having the Debtor expend $1 million in legal fees against a lopsidedly well-capitalized opponent, rather than promptly commencing a chapter 11 to avoid the BAE Purchase Agreement's related transfers.

Now, Debtor's management proposes a Settlement containing releases are so broad that the very Debtor officers whose apparent breaches of fiduciary duties give rise to claims held against them by the Puglia estate apparently stand to be exculpated before the Official Creditors Committee has an opportunity investigate: "*the Puglia Parties release on behalf of themselves and any bankruptcy estate … any and all claims and causes of action for damages or any other legal or equitable*

COMMITTEE'S RESPONSE TO 9019 MOTION- 1

DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

*remedies with respect to the Purchase Agreement and the Shipyard Transaction…"* Settlement Agreement, ECF No. 8-1 at § 2(viii).

As with any statutory committee in a chapter 11 case with this problematic, complex, and conflicted profile, the Official Creditors Committee must be afforded more than 14 days (May 4, 2018 through May 17, 2018) to retain attorneys, obtain discovery of critical, relevant information from the Debtor, and assess the propriety *vel non* of the proposed Settlement. If it is deprived of adequate information and time to review it, as sought by the conflicted insider controlled Debtor,[1] the Official Creditors Committee cannot satisfy its duty under 11 U.S.C. § 1103(c)(2) to: *"investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case ..."*

## II.    LEGAL ARGUMENT

Debtors contend that the Court may not scrutinize the proposed settlement terms. This is not so when the asset being released is a crown jewel in the case,[2] and especially when the transaction is self-interested, i.e., the Debtor's management consenting to the Settlement, simultaneously are inoculating themselves from breach of fiduciary duty claims undisclosed to this Court. In such instances of insider self-interested transactions, Washington corporate law requires Debtor's executive management to show the transaction is intrinsically "fair" to the Puglia estate. RCW 23B.08.710(2)(c). The Debtor has failed to meet its affirmative burden concerning the pending 9019 Motion.

**A.    The *In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) factors are not met**

---

[1] This Opposition is filed on May 14, as opposed to May 10, because the Debtor allowed the Official Creditors Committee additional time to review certain limited items in its elementary discovery request. However, the Debtor has failed to produce the majority of the requested documents and the entirety of the requested interviews of insiders in their entirety remain unfulfilled. For example, Debtor has offered to make management only available for 15 minute interviews, to cover all the issues in the BAE Purchase Agreement. *See* Declaration of Kyle Lonergan, Esq. at ¶ 12.

[2] *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1313 (5th Cir.1985).

COMMITTEE'S RESPONSE TO 9019 MOTION- 2

DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

None of the *A & C Properties* factors here warrant approval of the proposed settlement. First – probability of success in the BAE litigation – the Debtor itself represents to this Court that if the Puglia estate continued the litigation of its claims against BAE to judgment, it would prevail. ECF No. 24 at p.7, l.5. Second, given BAE's substantial size, Puglia also concedes collectability against BAE is a non-issue.

As to the third prong, the relevance of the Debtor's assertion in the 9019 Motion that the litigation would be costly to the estate, ECF No. 24, p. 7, ll. 9-14, has been significantly diminished. The Official Committee has retained McKool Smith, P.C. to investigate and monetize the estate's litigation claims. With regards to the estate's BAE, insider and other claims, upon completion of such investigation, McKool Smith may propose a contingent fee engagement to prosecute such claims. Accordingly, the valuable potential solution presented to the estate for enforcing the BAE claims – which the Debtor itself represents to this Court as meritorious – should not be surrendered by prematurely approving the 9019 Motion. McKool Smith requires an opportunity to fulfill its statutory mandate under 11 U.S.C. § 1103(c)(2) to investigate these claims.

Fourth, the Official Creditors Committee interprets the Settlement Agreement (ECF No. 8-1) to require the Debtor to assume more than $30 million of union pension liability. *Id*. at p. 2, at § 2(v). Unless the Settlement offers to pay into the Puglia bankruptcy estate an equal amount of cash, the net effect of the proposed 9019 Motion settlement appears to dilute recoveries on account of allowed general unsecured claims by approximately 75%.

The Debtor's contention as to the benefits of the 9019 Motion – that settlement will avoid "years" of delay brought about by trial preparation/appeal and enable recapitalization of the Debtor's business operations, ECF No. 24 at p. 7 – ignores that adversary proceedings can proceed to trial in this Court (and perhaps the District Court if a jury trial were requested) in less than a year. To be sure, the Debtor may not appropriate the asset that it represents to this Court to be the estate's largest asset, while real monetization of that asset to benefit of the estate exists.

**B. The Settlement Agreement Itself Overreaches**

COMMITTEE'S RESPONSE TO 9019 MOTION- 3



DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

Case 18-41324-BDL    Doc 140    Filed 05/14/18    Ent. 05/14/18 11:26:48    Pg. 3 of 6

The underlying proposed Settlement Agreement (ECF No. 8-1) is problematic on its face. Among other things, Section 2 seeks to have the Debtor swear to dubious factual representations:

> *[Puglia] (a) developed a viable business case for SFSR that supported PEI's decision to enter into the Purchase Agreement and consummate the Shipyard Transaction; (b) relied on their own investigation and analysis in entering into the Purchase Agreement and Shipyard Transaction; and (c) had such documents and information made available to them, and evaluated such documents and information, as they deemed necessary in connection with the execution, delivery, and performance of the Purchase Agreement and the Shipyard Transaction; (ii) the Purchase Agreement and Shipyard Transaction were the product of arm's-length negotiations; (iii) PEI and Mr. Turney was, and remains, an informed and sophisticated participant in the Purchase Agreement and Shipyard Transaction; (iv) at all times up to and including the Closing Date, PEI and Mr. Turney intended to run SFSR as a going business concern…*

These "representations" appear to be untrue when compared to the Debtor's averments contained in its California complaint. *See* ¶ 2 of the California Complaint, attached to the Lonergan Declaration as **Exhibit A**. The Debtor has yet to provide the Official Committee or this Court with the written "*viable business case*" that the Debtor purportedly prepared to support its original decision to enter into and close transactions at the seismic event epicenter of this chapter 11 case, the Purchase Agreement with BAE. By representing in the 9019 Motion that the estate's claims against BAE are meritorious, but presenting a Settlement Agreement for approval that provides exactly the opposite, the Debtor appears to draw the Court into a manifestly improper transaction damaging the integrity of these proceedings.

**C.**     **This Settlement Requires the Highest Degree of Scrutiny**

In the 9019 Motion, Debtor references *Burton v. Ulrich* for the proposition that the Court need only "*canvas the issues*." ECF No. 24 at p. 6, l.16. And in its Reply, Puglia contends that the 9019 Motion merely effectuates a routine disposition of assets at the outset of a bankruptcy case. ECF No. 99 at p. 1.

The Court does not need rush in its consideration of the Settlement – by its own terms, BAE's offer to the estate to settle the claims remains open until July 2, 2018. ECF No. 8-1, at § 4. Given the potential self-dealing present here – with Puglia's management engaging in the mismanagement[3] that

---

[3] The Debtor entered into and closed the BAE Purchase Agreement without advice of legal counsel even as, of course, BAE employed legal counsel in the transaction who in fact dealt directly with Puglia officers. Lonergan Declaration at ¶ 14.

COMMITTEE'S RESPONSE TO 9019 MOTION- 4

DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205  Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737

brings it to bankruptcy and then seeks to absolve its actionable corporate decision making through ambiguous release provisions (§ 2(viii)) in the proposed Settlement – a higher standard must apply, requiring the time and effort of careful scrutiny.[4]

Unsecured creditors – scheduled as 602 claimants seeking $11.7 million – must rely that the Settlement not being approved prematurely, because the alternatives for their recovery remain unclear if the 9019 Motion is granted. Without demonstrable proof to the contrary, the Official Committee is concerned about recoveries solely from the modest continuing operations of the Debtor's business without capital contribution from the equity holder or a third party or a sale of operating assets. That dismal prospect for aggrieved creditor recoveries worsens where, as contemplated by the 9019 Motion, $30 million of dilutive additional pension liabilities are further heaped on the Puglia estate.[5]

### D. The 9019 Motion Must be Denied Because Crucial Relevant Information Remains Withheld by the Debtor

Without such necessary information and textual clarifications, neither this Court nor the Official Creditors Committee can make an informed determination as to whether the estate's creditors benefit from the Settlement, which debtor's estate would be benefitted, and how such estate must deploy the Settlement Payment. As set forth in greater detail in the supporting Declaration of Kyle Lonergan (¶ 13) and the Motion to Continue, the Debtor needs to provide the Official Creditors Committee with a full set of documents relevant to the BAE Purchase Agreement and a meaningful opportunity to interview the Puglia officers who negotiated the Purchase Agreement on behalf of the Debtor. Only then can the Official Creditors Committee fulfill its statutorily mandated investigation.

---

[4] Indeed, it is not unusual for bankruptcy courts in Tacoma to require particular scrutiny of settlements involving significant case assets where there are asserted conflicts of interest. In the *Prium* case, Case No. 14-44512-PBS, the Calfo law firm was retained as an examiner and paid $75,000 to establish the fairness *vel non* of a proposed litigation settlement, resolving significant proofs of claim. ECF No. 155.

[5] Notably, the Settlement Agreement is silent on the allocation of the Settlement Payment as between debtor Puglia and debtor SFSR (as both debtors are parties to the settlement), as between debtors and creditors (is each debtor going to utilize all the funds and leave nothing for the unsecured creditors?), and as between "recapitalizing" and "plan funding".

COMMITTEE'S RESPONSE TO 9019 MOTION- 5

**DBS | LAW**

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
p: 206.489.3802  |  f: 206.973.8737

DATED this 14th day of May, 2018.

DBS | LAW

By /s/ Benjamin A. Ellison
Benjamin A. Ellison, WSBA No. 48315
155 NE 100th St., Suite 205
Seattle, WA 98125
Tel: (206) 489-3819
bellison@lawdbs.com

*-and-*

H. Jeffrey Schwartz, Esq. (admitted *pro hac vice*)
McKOOL SMITH, P.C.
One Bryant Park 47th Floor
New York, NY 10036
Tel: (212) 402-9400
hjschwartz@mckoolsmith.com
Proposed Trial Counsel for Unsecured Creditors Committee

Edward L. Schnitzer, Esq. (admitted *pro hac vice*)
Gilbert R. Saydah Jr., Esq. (admitted *pro hac vice*)
**CKR LAW LLP**
1330 Avenue of the Americas, 14th Floor
New York, New York 10019
Telephone: (212) 259-7300
Facsimile: (212) 259-8200
Email: eschnitzer@ckrlaw.com
        gsaydah@ckrlaw.com
Proposed General Counsel for Unsecured Creditors Committee

*-and-*

Jill M. Williamson, Esq.
**CKR LAW LLP**
506 Second Avenue, Suite 1400
Seattle, Washington 98104
Telephone: (206) 582-5145
Email: jwilliamson@ckrlaw.com

COMMITTEE'S RESPONSE TO 9019 MOTION- 6



DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
p: 206.489.3802 | f: 206.973.8737